UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Eastern District of Kentucky
**FILED**
JUL 11 2022
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

CRIMINAL ACTION NO. 5:22-CR-19-DCR

UNITED STATES OF AMERICA     PLAINTIFF

V.     **PLEA AGREEMENT**

JASON CATES     DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the indictment charging a violation of 18 U.S.C. § 371, conspiracy to commit the offense of transporting in interstate commerce goods with a value of $5,000 or more, knowing the same to have been stolen, contrary to 18 U.S.C. § 2314. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Count 2 of the Indictment.

2. The essential elements of Count 1 are:

(a) that two or more persons conspired, or agreed, to transport in interstate commerce stolen goods valued at $5,000 or more, that the conspirators knew were stolen;

(b) that the Defendant knowingly and voluntarily joined the conspiracy; and

(c) that the Defendant carried out one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

3. As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) In the fall of 2021, Defendant Jason Cates lived in Knoxville, Tennessee. He was serving a term of supervised release following imprisonment for a federal bank robbery conviction in July 2015 in the Eastern District of Tennessee.

(b) On August 19, 2021, the Defendant burglarized Webb's Cards and Collectibles, a business in Knoxville, Tennessee, that specializes in selling sports cards and sports collectables. He stole several boxes of sports cards, opened the boxes and later sold individual cards at a card show and over the internet, to customers around the United States.

(c) On September 22, 2021, the Defendant drove to Lexington, Kentucky, along with R.M., his romantic partner, for the purpose of burglarizing Kentucky Roadshow Shop (KRS). They arrived late and the Defendant dropped off R.M. at a 24-hour restaurant, while he executed the burglary at KRS just after midnight. During the burglary, the Defendant took several items including a 2018-2019 Donruss Optic Basketball card box, two Donruss Optic Football Asian Exclusive card boxes, and a case of 10 in-house prepared baseball card mystery boxes. Collectively, these items had a retail value of approximately $10,000. R.M. stayed in contact with the Defendant throughout the burglary and devised a navigable route out of Lexington to Interstate-75, leading back to Tennessee. After some vehicle trouble, the Defendant and R.M. eventually returned to Knoxville on September 23, 2021, with the stolen sports merchandise. The Defendant sold that merchandise to various customers over the internet, using Facebook marketplace and other sales tools. Some customers were located outside Tennessee. For example, one customer, A.B., who lived in Newburgh, Indiana, purchased a Topps 1964 Ernie Banks baseball card. The Defendant shipped the stolen card to A.B. in Indiana in return for payment.

(d) On or around October 2, 2021, the Defendant traveled to New Buffalo, Michigan, where in the middle of the night, he used a hammer to break in and burglarize a business called the Sport Card Shop. He took approximately seven packs of sports cards, including Top Chrome Soccer cards and Immaculate Collection Baseball cards. The Defendant sold the cards in the following days to individuals either in person or over the internet as described above.

(e) Breaking Bangers is a sports card and merchandise retail store, located in Cartersville, Georgia. From October 4, 2021, to October 14, 2021, the Defendant and R.M. made a total of three road trips from Knoxville to Cartersville in order for the Defendant to burglarize Breaking Bangers. Each time, the Defendant used a hammer or crowbar to smash a window at Breaking Bangers to gain entry. During the first two burglaries, the Defendant took several sports card box sets, but on the third robbery, he broke into the store's main office and stole a much larger amount of sports card merchandise. The Defendant sold some of the merchandise from the first two burglaries, shipping it to buyers both in and outside of Tennessee; but did not sell any of the merchandise from the last burglary before being arrested by the Knoxville Police.

(f) The Defendant admits that, in total, the value of the stolen merchandise he burglarized and transported across state lines exceeds $250,000, but is less than $550,000. The restitution amount owed to the four business victims, offset by any stolen merchandise already returned, is as follows: Webb's Cards and Collectibles: $37,111; Kentucky Roadshow Shop: $10,000; Sport Card Shop: $2,500; and Breaking Bangers: $226,886.

4. The statutory punishment for Count 1 is imprisonment for not more than 5 years, a fine of not more than $250,000 or twice the value of the stolen property involved in the conspiracy, whichever is greater, and not more than 3 years of supervised release. There is a mandatory special assessment of $100.00 that applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the sentencing hearing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) United States Sentencing Guidelines (U.S.S.G.), November 2021, Manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes his actions listed in paragraph 3 which under U.S.S.G. §§ 2X1.1(a) and 2B1.1(a), begins at an offense level of 6.

  (c) Pursuant to U.S.S.G. § 2B.1.1(b)(1)(G), because the value of the transported stolen goods is more than $250,000, but less than $550,000, increase the offense level by 12.

  (d) Pursuant to U.S.S.G. § 2B.1.1(b)(4), increase the offense level by 2 because the Defendant was in the business of receiving and selling stolen property.

  (e) Pursuant to U.S.S.G. § 2B.1.1(b)(16)(B), increase the offense level by 2 because the Defendant committed the crime while in possession of a dangerous weapon.

  (f) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant=s timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

8. The Defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea and conviction.

9. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other

third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

10. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time.

The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

11. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

12. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

13. This Agreement does not bind the United States Attorney=s Offices in other districts, or any other federal, state, or local prosecuting authorities.

14. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

Date: 7-5-2022   By: *William Moynahan* (signature)

William P. Moynahan
Assistant United States Attorney

Date: 6-09-22  _____
Jason Cates
Defendant

Date: 6-9-2022  _____
Kathryn Walton
Attorney for Defendant